IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KENNETH ASHMORE,

                                             OPINION and ORDER

                Plaintiff,

                                             07-C-0458-C

     v.

MATTHEW FRANK, Secretary;
JACK KESTIN, Classification Specialist;
JANE DIER-ZIMMEL;
ROBERT SCHENCK; and
SARA POLK,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a proposed civil action for monetary relief, brought pursuant to 42 U.S.C. § 1983. Plaintiff Kenneth Ashmore contends that defendants Matthew Frank, Jack Kestin, Jane Dier-Zimmel, Robert Schenck and Sara Polk violated his First, Fifth, Eighth, and Fourteenth Amendment rights by placing him in temporary lockup for no good reason, by depriving him of access to religious materials and services and by interfering with his outgoing mail. Although plaintiff has paid the filing fee in full, because he is a prisoner, his complaint must be screened pursuant to 28 U.S.C. § 1915A.

In performing that screening, the court must construe the complaint liberally. Haines

1

v. Kerner, 404 U.S. 519, 521 (1972).  However, when the litigant is a prisoner, the 1996 Prison Litigation Reform Act requires the court to deny leave to proceed if the prisoner has had three or more lawsuits or appeals dismissed for lack of legal merit (except under specific circumstances that do not exist here), or if the prisoner's complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages.  This court will not dismiss plaintiff's case on its own motion for lack of administrative exhaustion, but if defendants believe that plaintiff has not exhausted the remedies available to him as required by § 1997e(a), they may allege his lack of exhaustion as an affirmative defense and argue it on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Massey v. Helman, 196 F.3d 727 (7th Cir. 1999); see also Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532 (7th Cir. 1999).

In his complaint, plaintiff included only a brief summary of some of the relevant events.  Plaintiff provided more details in a document titled "Declaration of Kenneth Ashmore."  Also, plaintiff attached to his complaint several documents commonly referred to as "administrative exhaustion materials," that document several attempts by plaintiff to seek remedies within the administrative agency.  Plaintiff's declaration and the exhaustion materials may be considered a part of the complaint for all purposes.  Fed. R. Civ. P. 10(c); Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002).  In his complaint, plaintiff alleges the

2

following facts.

## ALLEGATIONS OF FACT

On July 14, 2004, plaintiff Kenneth Ashmore, a prisoner, arrived at the Oregon Correctional Center to complete a one year commitment as a cook. After his commitment was complete, he was asked to stay on as a cook until he was to be released. He agreed to stay.

Plaintiff worked as a cook for approximately twenty months without problem. Then, on or about March 17, 2006, defendant Robert Schenck placed plaintiff in temporary lockup. Plaintiff was told at that time that he would be transferred to a higher security prison and that he would lose his job, his placement and his community custody. This was because defendant Polk speculated about the risk a sex offender presents in a work release center. Plaintiff believes defendants Keskin and Dier-Zimmel advised Polk to take this action.

Plaintiff asked staff what he had done to be placed in temporary lockup and scheduled for transfer. Staff told plaintiff he had done nothing wrong but that "someone in Madison" had ordered his movement. Plaintiff then received a paper stating that he was to be "transferred to higher security, fear inmate might escape." He asked staff how they had concluded he would be an escape risk, even though he had never said anything about

3

escaping or attempted to escape. Again, plaintiff was told that he had done nothing wrong.

Plaintiff was taken to the Oakhill Correctional Institution and placed in temporary lockup. He was not evaluated every seven days as required by the DOC rules and he was held in that status for 26 days, five days longer than DOC rules allow. While in temporary lockup, plaintiff was not allowed to attend religious services or obtain the Bible that his parents had sent him.

On April 13, 2006, the same day plaintiff was released from temporary lockup, he met with the Program Review Committee, who told him he would be held at Oakhill Correctional Institution because of the crime for which he was sent to prison.

On April 26, 2006, the Program Review Committee told plaintiff that he would be staying at Oakhill Correctional Institution. He appealed the decision to defendant Frank.

His appeal was denied. Subsequently, plaintiff filed a petition for a writ of certiorari with the Circuit Court for Dane County. The court ruled in his favor, stating that "It is clear that Ashmores [sic]  rights under the administrative code provides [sic] in section 303.11 regarding T.L.U. were violated" and "Ashmore was retained in T.L.U. on the bases [sic] that he was an escape risk if in general population. There is not an iota of evidence to support this assertion. It is the epitome of arbitrariness." The court ordered that plaintiff be returned to the Oregon Correction Center promptly and be returned to his status as of March 16, 2006. When plaintiff was not moved back to the Oregon Correction Center

4

immediately, he filed a motion for contempt, and was moved two hours before the contempt hearing on May 15, 2007.

When plaintiff arrived back at the center, he showed a copy of the court order to a Captain Johnson. Johnson later informed plaintiff that he was told by Attorney General Shunette Campbell Hunter that all the circuit court's order required was the return of plaintiff to the center and the return of community custody status. It did not require defendants to return plaintiff's job or give him back pay for the time he lost.

Plaintiff eventually was returned to his position as dinner cook. Plaintiff asked about back pay and was told he would not receive it. He has filed a notice of claim with the state Attorney General to recover lost wages.

## DISCUSSION

### A. Due Process Claim

Plaintiff contends that his rights were violated when he was placed in temporary lockup for 26 days without periodic reviews in violation of Wisconsin's Administrative Code and when he was moved to a higher security facility, which caused him to lose his job. He seeks compensatory damages for lost wages, punitive damages and sanctions against the Department of Corrections for these actions. I construe plaintiff's allegations as a claim that defendants violated his constitutional right to procedural due process.

5

A procedural due process claim against government officials requires proof of inadequate procedures as well as interference with a liberty or property interest. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989). In Sandin v. Conner, 515 U.S. 472, 483-484 (1995), the Supreme Court held that liberty interests "will be generally limited to freedom from restraint which . . . imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." In the prison context, these protected liberty interests are essentially limited to the loss of good time credits or placement for an indeterminate period of time in one of this country's "supermax" prisons. E.g., Wilkinson v. Austin, 545 U.S. 209 (2005). As the Court of Appeals for the Seventh Circuit noted in Wagner v. Hanks, 128 F.3d 1173, 1176 (7th Cir. 1997):

> Every state must have somewhere in its prison system single-person cells in which prisoners are sometimes confined not because they have misbehaved but simply because the prison has no other space, wishes to protect some prisoners from others, wishes to keep prisoners isolated from one another in order to minimize the risk of riots or other disturbances, wishes to prevent the spread of disease, and so forth. Almost 6 percent of the nation's prison inmates are in segregation, Criminal Justice Institute, Inc., Corrections Yearbook 22 (1997), and it appears that the great majority of these are not in disciplinary segregation (see Criminal Justice Institute, Inc., Corrections Yearbook: Adult Corrections 27 (1995), showing that in 1995 almost 5 percent of all prison inmates were in nondisciplinary segregation).

In Wisconsin, the type of administrative confinement the court of appeals described in Wagner is known as "temporary lockup," a "nonpunitive segregated status allowing an inmate to be removed from the general population pending further administrative action."

6

Wis. Admin Code §§ DOC 303.02(22); 303.11.

When the action a plaintiff challenges is solely his "confinement in . . . segregation for a period that does not exceed the remaining term of the prisoner's incarceration," the court of appeals has stated that "it is difficult to see how after Sandin it can be made the basis of a suit complaining about a deprivation of liberty." Wagner, 128 F.3d at 1176. Plaintiff's 26-day placement in temporary lockup did not extend the overall length of his sentence. Moreover, the placement was of limited duration. There is no indication that the conditions were atypical in any way. Accordingly, plaintiff has not alleged facts from which an inference may be drawn that he was deprived of a liberty interest when he was placed in temporary lockup.

Plaintiff appears to believe that he had a liberty interest in receiving periodic reviews during his placement in temporary lockup and in not being held beyond the 21-day maximum set in Wisconsin's administrative code. However, state regulations creating procedural rights do not create additional protections under the due process clause. Shango v. Jurich, 681 F.2d 1091, 1101 (7th Cir. 1982) (citations omitted). When prison officials fail to follow state law, the remedy lies in state court. Plaintiff took advantage of that remedy and obtained relief under a writ of certiorari. Therefore, plaintiff's claim that he was entitled to due process protections before he was placed in temporary lockup and transferred to a more secure institution must be dismissed as legally meritless.

Next, I must consider whether plaintiff had a protected liberty interest in remaining in his job. In <u>Higgason v. Farley</u>, 83 F.3d 807, 809 (7th Cir. 1996), the Court of Appeals for the Seventh Circuit held that the loss of "social and rehabilitative activities" is not "atypical and significant hardship" that raises constitutionally actionable rights under <u>Sandin</u>, 515 U.S. 472, and in <u>Vanskike v. Peters</u>, 974 F.2d 806, 809 (7th Cir. 1992), the court stated expressly that a prisoner has no protected liberty interest in a prison job. In fact, as the court noted in <u>Vanskike</u>, the Constitution does not require that prisoners be paid at all for their work. <u>Id</u>. ("[T]here is no Constitutional right to compensation for [prison] work; compensation for prison labor is by 'grace of the state'") (quoting <u>Sigler v. Lowrie</u>, 404 F.2d 659, 661 (8th Cir. 1968)). Therefore, plaintiff's claim that he had a liberty interest in his job requiring due process protections will be dismissed as legally meritless.

B. <u>Eighth Amendment Claim</u>

The Eighth Amendment's prohibition against cruel and unusual punishment protects inmates only from conditions of confinement that "involve the wanton and unnecessary infliction of pain." <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). Plaintiff suggests that his confinement in temporary lockup constitutes cruel and unusual punishment under the Eighth Amendment. The Eighth Amendment is concerned with the nature of the treatment an inmate receives, not with the procedure leading up to such treatment. Even if it is true

that plaintiff was placed in temporary lockup without adequate explanation, it does not automatically follow that his confinement constituted cruel and unusual punishment.

Plaintiff does not allege any facts from which an inference may be drawn that while he was confined in temporary lockup he was exposed to conditions that rise to the level of cruel and unusual punishment. Having failed to do that, plaintiff has failed to state a claim for an Eighth Amendment violation.

### C. First Amendment Free Exercise and RLUIPA Claims

In one sentence buried in the body of his complaint, plaintiff alleges that while he was in temporary lockup, he was not allowed to use his Bible or attend religious services. Although it is not at all clear that plaintiff intended to raise this matter as a separate claim in the lawsuit, I will address it.

Both the First Amendment free exercise clause and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) offer inmates protection to exercise their religion. In order to succeed on his First Amendment or RLUIPA claims, plaintiff will have the initial burden to show that his religious exercise was substantially burdened by his inability to access religious materials and services. Vision Church v. Village of Long Grove, 468 F.3d 975, 996-97 (7th Cir. 2006). A substantial burden is "one that necessarily bears a direct, primary, and fundamental responsibility for rendering religious exercise . . .

9

effectively impracticable." Civil Liberties for Urban Believers v. City of Chicago, 342 F.3d 752, 761 (7th Cir. 2003). If plaintiff can show that the absence of these religious materials and services substantially burdened his ability to practice his religion, defendants must prove that the deprivation was adequately justified by a legitimate interest (or compelling interest, under RLUIPA). Borzych v. Frank, 439 F.3d 388 (7th Cir. 2006); Kaufman v. McCaughtry, 419 F.3d 678 (7th Cir. 2005); Tarpley v. Allen County, Indiana, 312 F.3d 895, 898 (7th Cir. 2002).

Although plaintiff's deprivation from religious services and materials lasted only 26 days while he was confined in temporary lockup, I cannot say as a matter of law that a 26-day deprivation is de minimis or otherwise could not possibly be a substantial burden to plaintiff's ability to practice his religion. Thus, plaintiff's claim that he was deprived of access to religious services and materials while in temporary lockup would be sufficient to state a free exercise claim at this early stage, except that plaintiff has failed to indicate how any of the defendants he names were involved in the alleged deprivation.

To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right. Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994). If a state official does not directly deprive an individual of a constitutional right, at the very least he or she must (1) know about unconstitutional conduct and (2) facilitate it, approve it, condone it or turn a blind eye to

10

it to satisfy the personal responsibility requirement of section 1983. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995).

Plaintiff named five defendants: Matthew Frank, Jack Kestin, Jane Dier-Zimmel, Robert Schenck and Sara Polk. He has not alleged that defendants Frank, Kestin or Dier-Zimmel directly deprived him of his Bible or access to religious services or knew that he was being deprived access to religious services and materials. Without such allegations, none of these defendants can be held personally liable under § 1983 with respect to his free exercise claim.

Plaintiff did allege that defendants Schenck and Polk knew "what went on." However, in its context, "what went on" referred to plaintiff's placement in temporary lockup and transfer for "no good reason." Plaintiff does not allege that either defendant Schenck or defendant Polk ever became aware that he had been deprived of his Bible or access to religious services while in temporary lockup. Even if I could construe plaintiff's allegations broadly enough to infer that defendants Schenck and Polk knew he was being denied religious services and materials, plaintiff fails to provide any indication that either defendant facilitated, approved, condoned or turned a blind eye to this deprivation. Thus, with respect to plaintiff's free exercise claim, neither of these defendants can be held personally liable under Gentry.

Rather than dismiss plaintiff's free exercise or RLUIPA claims for failing to identify

11

Case: 3:07-cv-00458-bbc   Document #: 6   Filed: 10/25/07   Page 12 of 15

the personal involvement of any defendant, I will give plaintiff 14 days to supplement his complaint to provide further details regarding his deprivation of religious materials and services. Plaintiff should identify the individuals who were personally involved in the alleged deprivation and indicate how each individual was involved. He should focus only on those individuals who either directly deprived him of religious materials and services or knew about the deprivation and facilitated, approved, condoned, or turned a blind eye to it.

One word of caution to plaintiff. Nowhere in the administrative exhaustion materials plaintiff attached to his complaint does he indicate whether he attempted to file an inmate complaint about his deprivation of religious materials and services. If plaintiff has not exhausted his administrative remedies with respect to this claim, the claim will likely face immediate dismissal if the defendants that plaintiff identifies file a motion raising failure to exhaust as an affirmative defense. Therefore, if plaintiff has not exhausted his administrative remedies, he should consider carefully whether it is prudent to proceed with the claim in this action.

### D. Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel with his complaint. That motion will be denied. In deciding whether to appoint counsel, I must first find that plaintiff has made reasonable efforts to find a lawyer on his own and has been unsuccessful

or that he has been prevented from making such efforts. Jackson v. County of McLean, 953 F.2d 1070 (7th Cir. 1992). To show that he has made reasonable efforts to find a lawyer, plaintiff must give the court the names and addresses of at least three lawyers that he asked to represent him in this case and who turned him down. Although in his motion plaintiff states that he has made repeated efforts to obtain counsel and states that he has attached letters from a few of the lawyers, no letters were attached. Plaintiff may have simply forgotten to attach the letters, or he may have used a form motion. Regardless, he has failed to make a showing that he has made reasonable efforts to find a lawyer.

Plaintiff should be aware that even if he shows that he has made reasonable efforts to find a lawyer and failed, that does not mean that one will be appointed for him. At that point, the court must consider "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." Pruitt v. Mote, ___ F.3d ___, 2007 WL 2850448 (7th Cir. Oct. 3, 2007). This case is simply too new to allow the court to evaluate plaintiff's capacity or the factual and legal difficulty of the case. Therefore, the motion will be denied without prejudice to plaintiff's renewing his request at a later time.

13

ORDER

IT IS ORDERED that

1. Plaintiff Kenneth Ashmore's claims that defendants violated his due process and Eighth Amendment rights are DISMISSED pursuant to 28 U.S.C. § 1915A because the claims in the complaint fail to state a claim upon which relief may be granted.

2. A decision is STAYED whether plaintiff may proceed with his claim that his First Amendment rights and rights under RLUIPA were violated when he was deprived of a Bible and the ability to attend religious services while he was confined in temporary lockup. Plaintiff may have until November 6, 2007, in which to submit a supplement to his complaint in which he identifies the individual or individuals who were personally responsible for these alleged deprivations. If, by November 6, 2007, plaintiff fails to submit the required addendum, I will assume that he did not intend to raise this matter as a separate claim in his lawsuit or that he wishes to dismiss the claim voluntarily because he has not yet exhausted his administrative remedies with respect to it. In that event, I will enter an order dismissing this action in its entirety.

3. Plaintiff's motion for the appointment of counsel is DENIED.

Entered this 23rd day of October, 2007.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge

15